**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BABA TRAORE,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN OF MOSHANNON VALLEY PROCESSING CENTER, et al.,<br><br>Respondents, | ) | 3:26-CV-01327-MJH |

**OPINION and ORDER**

Presently before the Court is Petitioner Baba Traore's Motion to Enforce the Court's August 21, 2026 Order directing Respondents to provide Petitioner with an individualized bond hearing. ECF No. 7. Petitioner argues that he did not receive an individualized bond hearing that comported with due process. Respondents have filed a Response opposing the Motion (ECF No. 10), to which Petitioner has filed a Reply (ECF No. 11). Both parties submitted audio of the bond hearing. Petitioner also filed a Notice of Supplemental Authority. ECF No 13.

Thereafter, the Court, *sua sponte*, directed the parties to file supplemental briefing to provide any further argument concerning whether the bond hearing decision afforded Petitioner an individualized determination; whether the absence of an interpreter at Petitioner's bond hearing affected Petitioner's due process rights; and whether an analysis of the *German Santos* factors affects the burden of proof in any new bond hearing. ECF No. 14. Petitioner and Respondents each filed a Supplemental Brief (ECF Nos. 16, 17), and Petitioner filed a Reply to Respondents' Supplemental Brief (ECF No. 18). After conducting a review of the parties' pleadings, the audio

of the bond hearing, and the transcript of the bond hearing, the Court will GRANT Petitioner's Motion to Enforce and order his immediate release.

**I. Background**

On July 10, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. ECF No. 1. On August 21, 2026, the Court granted this Petition in part, ordering Respondents to provide Petitioner with an individualized bond hearing before a neutral immigration judge within 30 days, or "else release Petitioner by such date." ECF No. 5. The Court also noted that "[t]his timeline may be extended by Petitioner upon a motion to the immigration judge" and that "Respondents shall ensure that the hearing include the required due process, including, at a minimum, factfinding based upon a record produced before a decisionmaker and disclosed to Petitioner; an opportunity to make arguments on Petitioner's behalf; and the right to an individualized determination of Petitioner's interests." *Id.*

On September 3, 2026, an immigration judge conducted a bond hearing and denied bond because, as stated in the immigration judge's Order, "there is no amount of bond that will ensure that respondent is likely to appear for any scheduled proceeding." *See* Order of the IJ, Sept. 3, 2026, ECF Nos. 8-1, at 9;10-1, 1. At the bond hearing, counsel for Petitioner relied upon the evidence submitted on the record. The parties agreed that the issue concerned risk of flight. The immigration judge began by asking counsel, "what family does he have here in the United States?" Tr. of Bond Hearing Proceedings, Sept. 3, 2026, ECF No. 17-1, at 2. Petitioner's counsel provided the following information:

- "He has two young children and his partner. One of the kids has a heart condition, because he was born prematurely."
- "his partner, the mother of his children has had to get a job, which leaves the children going to daycare."

- "And this particular child [with the heart condition] needs to be with his mother instead [of] with a daycare person, because he has a medical condition and will continue to have one."

*Id.* at 2-3. Later in the hearing, the immigration judge asked counsel, "Are the children U.S. citizens?", to which counsel responded, "Yes." *Id.* at 4.

Counsel also presented the following information to the immigration judge in support of finding that petitioner was not a flight risk:

- Petitioner "has many documents that say that he is a man of high character."
- He has "a certificate from the detention center praising his work as a cook,"
- "This is a man of high character."
- "he showed up on time for his ICE check-in and that's how he was detained. . . . He was not running. He was not any sort of flight risk. He was doing exactly what he [] was told to do."

*Id.* at 3.

Before rendering a decision, the immigration judge stated that he wanted to "look at the heart [issue] here." *Id.* at 4. The child's medical documents comprised over 50 pages (with some duplicate documents). *See* ECF No. 8-1 at 17-76. After reviewing the documents, the immigration judge then made the following statements about Petitioner's child's heart issue:

> So I'm -- admittedly, I've only ever been an EMT, which I was one time. But I do know a thing or two about heart issues from my own children. And he tolerates a regular diet and is quite active. Mom has no concerns, has no recent illnesses or hospitalizations, does not need follow-up with any sub-specialist. Seems to kind of speak for itself in terms of the risks to the children from the heart issue.

Tr. of Bond Hearing, at 4. Later, after issuing his oral ruling denying bond, the immigration judge explained that "the medical report itself, does not make out a strong case for, you know, justifying releasing a [petitioner] who already has an order of removal against him." *Id.* at 5. In issuing his ruling the immigration judge made the following remarks in support of denying bond:

> He has a -- you know, he has a removal order against him. To me, that is almost a -- like that is about 99 percent of the weight to flight risk, and it is a very rare instance where someone who has a removal order is not a flight risk. And so I would say, you know, that this is not that case. He's -- all of his relief was denied. I

> understand your argument on appeal. I don't -- I -- you know, if he -- if the appeal is granted, and the case is remanded, you've got changed circumstance, potentially. You know, this -- if there weren't this order, the court might view it differently. But you do have that against him, and I think the pursuit of an appeal is -- the reversal on appeal is speculative. So I will deny on flight risk.

*Id.* at 4.

Before the hearing closed, the immigration judge asked Petitioner's counsel, "Okay. And you said, sir, that you can -- because I don't have a Mandingo interpreter. So will you be able to communicate the -- offline with your client to explain everything?" *Id.* at 6. Counsel replied, "I shall. And I think French is probably his second best language." *Id.* The immigration judge replied, "I don't have a French interpreter right now either." *Id.* Counsel stated, "I will certainly get a chance to speak with him someone from my office speaks -- . . . -- all those languages." *Id.*

**II. Discussion**

Petitioner alleges that his bond hearing was fundamentally unfair because the "immigration judge failed to give meaningful weight to Mr. Traore's voluminous evidence of *current* community ties, including his familial relationships, stable employment and housing, and volunteer efforts within his community." Br. Supp. Mot., ECF No. 8, at 4 (emphasis in original). Specifically, Petitioner argues that, because the immigration judge relied almost exclusively upon the fact that Petitioner had a pending non-final removal order, Petitioner did not receive an individualized bond hearing in accord with due process. Petitioner emphasized that he had "presented evidence of stable housing and employment, familial support, wage documentation and future employment, his children's birth, and the ongoing ventricular dysfunction and continued monitoring of his oldest child's heart," as well as "evidence of his volunteer efforts." *Id.* at 5. In supplemental briefing, Petitioner argues that his due process rights were also violated because he was not given an opportunity to be heard due to the lack of an interpreter. He requests that the Court Order his

immediate release, or, in the alternative a new bond hearing. Finally, he argues that in any bond hearing ordered by the Court, the burden of proof should be placed upon the government.

Respondents oppose Petitioner's Motion, first arguing that this Court lacks jurisdiction to review any discretionary determinations underlying the immigration judge's bond decision. Second, Respondents argue that Petitioner has not shown that his bond hearing was fundamentally unfair, in violation of due process requirements. In supplemental briefing, Respondents argue that Petitioner received a fundamentally fair hearing despite the lack of an interpreter, and that the burden of proof should not shift to the government in any new bond hearing.

**A. Applicable Law**

The Court agrees with Respondents that federal courts "lack jurisdiction to review any discretionary determinations underlying the [immigration judge's] bond decision," but may "review whether the bond hearing was fundamentally unfair" such that it violates the detainee's due process rights. *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).[1] Here, the Petitioner is not asking this Court to invade the immigration judge's discretionary authority. He is asking the Court to enforce its own Court Order by determining whether the Court-ordered bond hearing was in accord with fundamental fairness and due process.

A bond hearing under 8 U.S.C. § 1226 is "fundamentally fair," and thus satisfies due process, if three essential elements are present: (1) factfinding based on a record produced before the decisionmaker and disclosed to the detainee; (2) the detainee is allowed to make arguments on

[1] *See also Mujica-Marquez v. Hoover*, No. 4:26-CV-00623, 2026 WL 1483740, at *2 (M.D. Pa. May 27, 2026) (concluding that "beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a court has the inherent power to enforce its own orders" (internal quotations removed)).

his or her behalf; and (3) the IJ makes an individualized determination of the detainee's interests. *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). When making this individualized determination, the "[m]echanistic reliance on factors that are common to all § 1226(a) detainees will not suffice" to satisfy due process. *Mujica-Marquez v. Hoover,* No. 4:26-CV-00623, 2026 WL 1483740, at *4 (M.D. Pa. May 27, 2026)*; A.S.G. v. Oddo,* No. 3:26-cv-0143, Slip Op. at 4 (W.D. Pa. Oct. 13, 2026). Rather, "[f]or a bond hearing to adequately provide an individualized determination, any evidence relied upon by an [IJ] must be individualized and support a finding that continued detention is needed to prevent the detainee from fleeing or harming the community." *Id.* Yet an immigration judge "need not discuss each and every piece of evidence…when rendering a decision, as long as that decision is substantially supported[.]" *Akbarov v. AG United States*, 629 F. App'x 309, 312 (3d Cir. 2015) (quoting *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 425 n.10 (3d Cir. 2005)).

The first issue for the Court is whether the lack of an interpreter for Petitioner during his hearing violated his constitutional due process right by denying him the right to advocate for himself. The second issue is whether the immigration judge's determination, that Petitioner was a flight risk, categorially relied upon the existence of Petitioner's non-final removal order and therefore violated Petitioner's due process rights. Finally, the third issue is, if Petitioner is awarded a new hearing, whether the burden of proof should shift to the government. *See German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 210-11 (3d Cir. 2020).

### B. Evaluation of the Second *Ghanem* Factor[2]

The second *Ghanem* factor is whether the petitioner was meaningfully allowed to make arguments on his own behalf. Here, because Petitioner was not provided with an interpreter in either his first or second language, it raises the issue of whether the failure to provide an interpreter violated his right to meaningfully make arguments on his own behalf. After the bond decision had been made, the immigration judge asked Petitioner's counsel whether he would be able to inform his client as to what occurred at the hearing. That question, and counsel's response, revealed that Petitioner spoke Mandingo and French, but not English. Thus, both the immigration judge and Petitioner's counsel were aware Petitioner needed an interpreter to communicate with them. No evidence was introduced showing that Petitioner or his counsel had waived an interpreter.

Respondents acknowledge that precedent in this Circuit is contrary to their position but argue that, in this case, the lack of an interpreter did not violate Petitioner's due process rights. ECF No. 17, at 4. Respondents argue that "Petitioner was represented by counsel;" counsel "was thoroughly prepared and well versed in Petitioner's circumstances;" "counsel submitted evidence on behalf of Petitioner;" counsel "explained the evidence in detail at the hearing;" counsel "never raised concerns surrounding Petitioner's ability to participate in the proceedings;" and counsel "asserted that he would be able to adequately convey what occurred at the hearing to Petitioner." *Id.* Respondent's argument, however, is weakened by the fact there was no waiver of an interpreter by counsel or Petitioner. In addition, there is no evidence that the immigration judge undertook an

---

[2] Neither party has argued the first *Ghanem* factor, which states that the petitioner is entitled to a hearing based upon a record produced before the immigration judge and disclosed to petitioner. As all three factors must be present to ensure due process, the Court agrees that it is unnecessary to analyze the first factor and thus will proceed directly to the second and third factors. *See Ghanem*, 2022 WL 574624 at *2.

inquiry as to whether Petitioner, himself, was able to participate in the proceedings without an interpreter.

Even though Petitioner and his counsel did not waive an interpreter, Respondents argue that it was sufficient, in part, that counsel did not raise any concern about Petitioner's ability to participate. The mere fact that counsel did not raise a concern over his client's ability to understand the proceedings, is insufficient, on its own, to comply with due process. In *Chi*, where counsel waived an interpreter for his client, the Court still concluded that the bond hearing was not fundamentally fair because, in part, the immigration judge did not inquire of petitioner if he needed an interpreter. *Chi v. Lowe*, No. 3:26-CV-1805, 2026 WL 2227305, at *10 (M.D. Pa. Aug. 3, 2026) (counsel waived an interpreter but petitioner "demonstrated that he was not 'allowed to make arguments' on his own behalf at the bond hearings because the IJ never asked him whether he needed a Mandarin interpreter, which prevented the IJ from making an individualized determination as to his flight risk and rendering his initial bond hearing fundamentally unfair"). Thus, even where counsel expressly waives an interpreter, due process requires that the immigration judge inquire directly of the petitioner whether an interpreter is needed in order to make an individualized determination as to flight risk. *Id.*

In this case, neither counsel nor Petitioner waived an interpreter, and the immigration judge never inquired of Petitioner as to the need for an interpreter. Without an interpreter, Petitioner was unable to elaborate on his family circumstances, employment, community ties, and other circumstances, as he was unable to understand the proceedings and he was not asked to participate. Petitioner was also unable to make arguments on his own behalf with respect to the immigration judge's statements regarding Petitioner's child's medical records. As such, because Petitioner was unable to make arguments on his own behalf, the Court finds he was not afforded a "fundamentally

fair" bond hearing that satisfies due process. *Ghanem*, 2022 WL 574624, at *2; *Chi*, No. 3:26-CV-1805, 2026 WL 2227305, at *10.

### C. Evaluation of the Third *Ghanem* Factor

Under the third *Ghanem* factor, "[d]ue process requires a neutral adjudicator to make [an] individualized assessment" of the detainee's interests. *See Vera-Velez v. Soto,* No. 26CV1480 (EP) (MAH), 2026 WL 963348, at *3 (D.N.J. Apr. 9, 2026) (citing *Ghanem*, 2022 WL 574624 at *2)). Petitioner argues that his bond hearing was not individualized because, immediately before denying bond, the immigration judge explained as follows:

> Petitioner "has a removal order against him. To me that is about 99 percent of the weight to flight risk, and it is a very rare instance where someone who has a removal order is not a flight risk. And so, . . . I would say this is not that case."

Tr. Hrg. at 3. The immigration judge reinforced his decision to deny bond by stating that he believed "reversal on appeal [of the non-final removal order] is speculative." Tr. 3.

Respondents acknowledge that "the immigration judge gave more weight to the order of removal over other factors," but argue that that "does not mean that the hearing itself was not individualized." ECF No. 17, at 2. ("it is clear from the transcript of proceedings [] and the audio of the bond hearing . . . , that the immigration judge placed more weight on Petitioner's order of removal over other factors raised with the court"). Respondents argue that when "discussing the removal order, the immigration judge stated that in some instances the facts of an individual's circumstances overcome the flight risk associated with an order of removal," but concluded "that those circumstances are not present in Petitioner's case." *Id.* Respondent's conclude that this

"observation shows that the IJ did in fact consider all of the evidence presented and found that the favorable evidence did not outweigh the removal order." *Id.*[3]

Where a petitioner appears for a bond hearing with a non-final removal order, and the immigration judge opines that petitioner's appeal would likely not be successful, another Court in this District stated as follows:

> Concluding that Petitioner is unlikely to be successful in his appeal does not necessarily connect to the determination that Petitioner is not likely to appear to future immigration proceedings. The same logic would apply [to] nearly every bond applicant under 8 U.S.C. § 1226(a) with a pending appeal; the existence of an appeal implies that an IJ would have already made a determination that the detainee was not eligible for lawful status in the United States. Section 1226(a) nevertheless obligates Respondents to provide a bond hearing even to such detainees. If the fact that a detainee is appealing his immigration status was determinative of flight risk, a bond hearing would be a mere "rubber-stamp," invalidating the very purpose for which it is held. *See Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001)). Denial of bond based on the fact of a non-final removal order "would be in conflict with Congress's decision to mandate detention for noncitizens with orders of removal *only* once those orders become final." *Timbigamba v. FCI Berlin, Warden*, 836 F. Supp. 3d 430, 446 (D.N.H. 2026) (emphasis added).

*A.S.G. v. Oddo,* No. 3:26-cv-0143, Slip Op. at *3 (W.D. Pa. Oct. 13, 2026). Here, the immigration judge also "did not connect [his] conclusion on the likelihood of Petitioner's ultimate success on the merits of his immigration applications to Petitioner's risk of flight in any way individualized to Petitioner." *Id.* "A non-final removal order and the purported unlikelihood of relief are quintessential 'mechanistic factors' common to nearly every noncitizen detained under § 1226(a), and thus cannot form the basis of an individualized

---

[3] In ordering supplemental briefing, this Court stated that a "review of the bond hearing audio and the Order of the IJ *appears to indicate* a mechanistic reliance upon Petitioner's non-final removal order, rather than a determination based upon any individualized findings." ECF No. 14, at 2 (emphasis added). The Court acknowledges Petitioner's concern that Respondents are second-guessing this Court's conclusion, stated in the previous sentence, and that Respondents "attempt to relitigate their individualized bond hearing arguments, without the Court's invitation or permission." ECF No. 18 at 2. The Court, however, did not reach any conclusion in is Briefing Order, but did invite both sides to "address[] any further argument concerning whether the bond hearing decision afforded Petitioner an individualized determination." ECF No. 14, at 3.

determination." *Id.* (citing *Almeida v. Lowe,* No. 4:26-CV-01750, 2026 WL 2943125, at *3 (M.D. Pa. Sept. 30, 2026) ("Mechanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice") (quoting *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020)) (brackets in original)).

The issue is whether Petitioner was deprived of an individualized bond hearing as a result of the immigration judge's view that, before the bond hearing begins and regardless of the evidence, a petitioner with a non-final removal order will be denied bond based upon flight risk 99 out of 100 times. Here, the immigration judge was in fact presented with substantial documentary evidence supporting that Petitioner is in a relationship, that he has two children; that one child has an ongoing heart condition; that he was employed; that he had appeared for his ICE check-in; that he was man of high character; and that he had ties to, and support from, the community. At the hearing, counsel summarized some of this evidence in support of Petitioner's high character, his employment, and his demonstrated compliance with appearing for his ICE check-in, and he argued that Petitioner was not a flight risk. The transcript of the hearing shows that the immigration judge viewed the *only* evidence that might possibly overcome his pre-hearing view that Petitioner is a flight risk, were the medical records of Petitioner's child with a heart condition. The immigration judge was forthright in stating that his view was that the existence of a non-final removal order will result in denial of bond in 99 out of 100 cases, and that, in this case, because the child's condition appeared to be stable, it did not overcome the existence of the non-final removal order.

The immigration judge did not address any of Petitioner's other evidence in connection with the question as to whether he was a flight risk. The immigration judge was silent as to the weight he gave to Petitioner's evidence submitted in support of showing that he was not a flight

risk. Such silence can only mean that the immigration judge viewed such evidence as insufficient to overcome the 99% determination that he was a flight risk, apparently even before the hearing began.[4] This is supported by the fact that the immigration judge's focus during the hearing was almost exclusively focused upon the medical condition of one of Petitioner's children. Therefore, in support of finding that Petitioner was a flight risk, the Court finds that the immigration judge 'mechanistically' relied upon the non-final removal order and the unlikelihood of success on appeal. Under such conditions, the Court finds that Petitioner was not afforded an individualized, fundamentally fair, bond hearing in accord with due process and this Court's Order.

## III. Relief

The Court finds that Petitioner did not receive a constitutionally adequate bond hearing. Respondents were forewarned that failure to comply with the Court's prior order would lead to Petitioner's immediate release. *See* ECF No. 5 ("Respondents shall cause Petitioner to be taken to a neutral immigration judge of the Executive Office of Immigration Review for an individualized bond hearing to occur within thirty (30) days of this order, or else release Petitioner by such date."); *see also A.D.*, 2026 WL 1251470, at *4 ("Finding unfair prejudice here, the undersigned is constrained to conclude that Respondents have failed to comply with the Order dated January 14, 2026, conditionally granting the Writ."); *Paulino*, 2026 WL 2546652, at *4 (same). "Respondents have now violated Petitioner's due process rights twice: first when they initially detained him unlawfully under § 1225(b), and then again when they deprived him of a constitutionally adequate

[4] Such an approach by the immigration judge (determining before the hearing that bond would be denied based upon a non-final removal order, not addressing Petition's individualized evidence, and not connecting it to the final bond decision) means that any similarly situated petitioner with a non-final removal order seeking bond, who presents evidence of a family, children, employment, ties to the community, and complying with ICE check-ins, will find that such evidence is a non-factor in determining flight risk. Put another way, an immigration judge with this approach is not providing petitioners with an individualized bond hearing.

bond hearing." *Haiguang Zheng v. Rokosky*, 826 F. Supp. 3d 545, 560 (D.N.J. 2026). When a constitutionally inadequate bond hearing is conducted by an immigration judge, "release, rather than ordering another bond hearing, is an appropriate equitable remedy." *Paulino v. Oddo*, No. 3:26-CV-898, 2026 WL 2546652, at *4 (W.D. Pa. Aug. 11, 2026). Respondents have failed to provide Petitioner with a constitutionally adequate bond hearing, and therefore the appropriate remedy is release.

Thus, the Court will grant Petitioner's Motion to Enforce and order Petitioner's immediate release from custody.

## IV. Conclusion

Accordingly, this 20th day of November 2026, it is hereby **ORDERED that** Petitioner's Motion to Enforce (ECF No. 7) is **GRANTED**, as follows:

**1.** Respondents shall immediately release Petitioner from immigration detention and transport him to his home residence within 72 hours of entry of this order.

**2.** Upon his release, Respondents shall provide Petitioner with any and all of his belongings seized[5] when he was taken into detention on December 15, 2025, and his belongings will accompany him to his home residence.

**3.** Respondents are to provide the Court with a report, once Petitioner is safely returned to his residence.

[5] Petitioner's personal belongings shall include, to the extent such documents were seized, his immigration documents and any government issued identification, such as a state driver's license.

**4.** Upon release, Respondents shall not require Petitioner to check-in with immigration authorities more frequently than once in any ninety (90) day period during the pendency of his removal proceedings.

**5.** Petitioner is not to be re-detained unless there is a subsequent change in Petitioner's circumstances where the government sufficiently alleges that such change affects the safety of the public or the Petitioner's likelihood of being a flight risk. "Respondent will be permanently enjoined from detaining Petitioner under 8 U.S.C. § 1225(b), absent a compelling change in circumstances." *Cherenfant, v. Warden, Pike County Correctional Facility*, No. 3:26-CV-2987, 2026 WL 3085459, at *5 (M.D. Pa. Oct. 15, 2026) (citing *Bethancourt Soto*, 807 F. Supp. 3d at 410 (permanently enjoining respondents from detaining petitioner under § 1225); *Patel v. O'Neill*, 2025 WL 3516865, at *6 (M.D. Pa. Dec. 8, 2025) (same). If Respondent elects to later detain Petitioner under 8 U.S.C. § 1226(a), the Respondent must provide Petitioner with notice and an opportunity to be heard at a timely individualized bond hearing where an Immigration Judge shall assess whether he is a danger or flight risk.

_s/*Marilyn J. Horan*
Marilyn J. Horan
United States District Judge